IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

DAVID H. EDWARDS, )
)
        Plaintiff, )
)
vs. ) Case No. 07-6077-CV-SJ-ODS
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
        Defendant. )

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

    Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his applications for disability and Supplemental Security Income benefits. The Commissioner's decision is affirmed.

    Plaintiff was born in June 1948. He has a degree in economics and prior to November 2002 had work experience as an accountant, stamp machine operator, mail clerk, housekeeper/janitor, and home health aide. In July 1988 he was diagnosed as suffering from diabetes.

    On November 19, 2002, Plaintiff was admitted to the emergency room at North Kansas City Hospital suffering from diabetic ketoacidosis. Treatment notes indicate Plaintiff "has been fairly noncompliant with his diabetes. He has not checked his sugar in about two to three years. He takes insulin according to how he feels." R. at 269; see also R. at 266. Plaintiff denied having problems with alcohol. R. at 266-267. Plaintiff was discharged on November 22 with instructions for managing his medication and to follow up at the free clinic within a week. R. at 267.

    Plaintiff did not follow up until December 16, 2002, at which time he saw Dr. Eric Aspinwall at the Swope Parkway Clinic. Dr. Aspinwall diagnosed Plaintiff as suffering from type one diabetes under control and changed Plaintiff's medication to help regulate Plaitniff's blood glucose levels. R. at 349. Plaintiff returned on January 7, 2003, at which time Dr. Aspinwell recorded Plaintiff's claims he "had multiple episodes of

hypoglycemia and [has] even passed out as result of his hypoglycemia." Plaintiff told Dr. Aspinwell he was "considering filing for disability for his diabetes" and the doctor indicated his condition was "poorly controlled." Plaintiff was "referred to Truman Medical Center for further evaluation and management of his type 1 diabetes mellitus. The patient was asked to follow up in approximately 4 weeks for followup." R. at 348.

Plaintiff returned to Dr. Aspinwell on February 26, reporting "that he has seen Dr. Weedy at Truman Medical Center for his diabetes. He has had his insulin changed and he was started on Lipitor for his elevated cholesterol." Plaintiff reported a decrease in the number of hypoglycemic episodes, and Dr. Aspinwell told Plaintiff to continue his care with Dr. Weedy. R. at 347. Plaintiff next saw Dr. Aspinwell on May 19 for a physical. He had "no specific complaints at this time. The patient has no health concerns or complaints at this time." Plaintiff reported drinking "4-5 beers every other day" and was told to limit his alcohol intake to help control his diabetes and return as needed. R. at 346.

Plaintiff did not return for over six months, at which time he reported "three episodes of hypoglycemia in the last week." Plaintiff reported he was still drinking "around 15 beers per week" and was told "to decrease his alcohol consumption because this may be adversely affecting his glycemic control." His medication was adjusted, and Plaintiff reported plans to see "Dr. Orr." R. at 345.

In May 2004, Plaintiff presented to the Swope Parkway Clinic reporting "multiple episodes of hypoglycemia, dizziness, light headedness, passing out" and that he had been to an emergency room six times in the last year. R. at 342. He returned in one month to review his labs and "requested . . . help w/ a disability assessment." His request was denied, and the doctor "discussed meal planning, glucose monitoring and insulin adjustment using a sliding scale. R. at 340-41. In September 2004 Plaintiff reported feeling good despite occasional low glucose levels. R. at 338. Plaintiff's status was reviewed in January, April and May of 2005. During the April visit, Plaintiff reported an episode of fainting. R. at 332-38. On September 2, 2005, Plaintiff complained of "recurring hypoglycemia, but glucose monitoring has not been consistent enough to observe that objectively." R. at 330.

Plaintiff filed for disability and supplemental security income benefits, alleging he became disabled on November 11, 2002. Plaintiff returned to full-time employment in June 2005, so he amended his application to seek benefits for the closed period of November 11, 2002, through May 31, 2005. During the administrative hearing, Plaintiff testified that his blood sugar drops to such a low level that he is rendered unconscious. R. at 406. He believed this prevented him from working because if he had such an episode while working he would have been fired. R. at 408. He testified the number of episodes began decreasing in December 2004, but he still experiences them and his current employer accommodates him. R. at 409-10. A vocational expert testified that a person with Plaintiff's education and work history could perform his past work even if he "had seizure precautions, that is no working at unprotected heights, no hazards, no operation of machinery, no driving" other than driving to or from work. R. at 413. If the person had episodes of hypoglycemia twice a month, that would preclude "start up jobs" but other jobs with sick leave policies (e.g., accounting) could be performed. R. at 413-14. One episode a month would not bar employment, and one episode a week would bar all employment. R. at 414-15.

The Record includes a Daily Activities Questionnaire Plaintiff completed in May 2004. The form reveals very few limitations on Plaintiff's functional abilities. R. at 131-35. Notably, Plaintiff reported that he had a driver's license and drove his car on a regular basis. R. at 134.

The ALJ found Plaintiff had suffered bouts of hypoglycemia, but those bouts were not as frequent, long, or severe as Plaintiff suggested. In discounting Plaintiff's testimony, the ALJ noted his record of noncompliance, the absence of confirming reports, the results of medical tests, and his daily activities. R. at 24.[1]

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the

---

[1] The ALJ also found Plaintiff's mood disorder and depression was not a severe impairment. R. at 23. Plaintiff has not challenged this aspect of the ALJ's decision, so the matter does not need to be discussed further.

3

Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Questions of fact, including credibility determinations, are primarily issues for the Commissioner (through the ALJ) to decide. E.g., Blakeman v. Astrue, 509 F.3d 878, 879 (8th Cir. 2007). The Court's role is to evaluate the Record as a whole to determine whether those factual/credibility determinations are supported by substantial evidence. In this case, the Court believes there is ample support for the ALJ's determination.

The primary (if not the sole) limiting feature of Plaintiff's diabetes is his purported spells of hypoglycemia. While he undoubtedly had such a bout in November 2002, Plaintiff's failure to comply with proper procedures for monitoring and treating his condition caused the incident. Over the ensuing years, Plaintiff continued to not fully comply with doctors' orders. For instance, he changed his medication on his own, was not always diligent about monitoring his blood glucose levels, and did not limit his alcohol intake as directed. Plaintiff reported going to the emergency room on several occasions, but no confirming records were provided. Plaintiff also reported to his doctors instances of losing consciousness, but (1) he rarely if ever sought contemporaneous treatment, (2) there are no records of contemporaneous treatment, and (3) the number of such events was inexplicably greater in his testimony. In fact, even if one accepts the truth of Plaintiff's reports to his doctors (despite the lack of corroborating medical records), the incidence of Plaintiff losing consciousness would not (based on the vocational expert's testimony) have precluded him from finding work. Nonetheless, the numerous occasions Plaintiff reported he was feeling fine (or simply failed to report any problems) provides an additional basis for discounting his testimony.

4

Plaintiff's daily activities were not limited in any noticeable way. Finally, Plaintiff reported that his condition improved shortly before he found a job in 2005, but his treatment had not changed appreciably.[2] A person's medical condition does not usually change for no reason, leading to the suspicion that Plaintiff's medical condition allowed him to work all along – and the precipitous event that caused him to return to work in June 2005 was a call from a former employer asking him if he was interested in a job. R. at 411.

      The ALJ was presented with conflicting evidence regarding the frequency and severity of Plaintiff's hypoglycemic attacks. A finding in Plaintiff's favor was not out of the realm of possibility. However, there is substantial evidence in the Record as a whole to support the ALJ's factual determinations, so the Commissioner's final decision is affirmed.

IT IS SO ORDERED.

|  |  |
|---|---|
| DATE: February 12, 2008 | /s/ Ortrie D. Smith<br>ORTRIE D. SMITH, JUDGE<br>UNITED STATES DISTRICT COURT |

---

[2]Plaintiff testified that his medications were changed in December 2004, after which his condition improved significantly. R. at 409. There is no record of a doctor's visit in December 2004, much less a record of any noteworthy change in his medication.

5